# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SHARITA HILL, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) Case No. CIV-25-522-SLP |
| STATE OF OKLAHOMA ex rel., THE OKLAHOMA MEDICAL MARIJUANA AUTHORITY, | ) ) (District Court of Oklahoma County, ) State of Oklahoma, Case No. CJ-2025- ) 2268) |
| Defendant. | ) |

## O R D E R

Before the Court is Defendant's Motion to Dismiss and Brief in Support [Doc. No. 6]. The matter is fully briefed and ready for decision. *See* Pl's. Resp. [Doc. No. 7] and Def.'s Reply [Doc. No. 8]. For the reasons set forth, Defendant's Motion is GRANTED and Plaintiff's federal claims are DISMISSED. Plaintiff's state-law claim is remanded to the District Court of Oklahoma County, State of Oklahoma.

## I.      Introduction

Plaintiff originally filed this action in the District Court of Oklahoma County, State of Oklahoma. Defendant them removed the action to federal court based on federal question subject matter jurisdiction. *See* Notice of Removal [Doc. No. 1]. Plaintiff is a former employee of the Oklahoma Medical Marijuana Authority (OMMA), a state agency

within the State of Oklahoma. *See* Compl. [Doc. No. 1-2] at ¶¶2, 6.[1]  Plaintiff is over the age of 50 years. *Id*., ¶ 6.

Plaintiff alleges that she was fired in retaliation for "protected whistleblowing activity" and based on her age after reporting a conflict of interest and a violation of OMMA policy. Compl., ¶ 32. She brings the following claims for relief: (1) a state-law *Burk* tort claim[2] for wrongful termination in violation of Oklahoma public policy; (2) a Title VII claim for retaliation pursuant to 42 U.S.C. § 2000e-3(a); and (3) an age discrimination claim under the Age Discrimination in Employment Act, 29 U.S.C. § 623. As relief, she seeks monetary damages.

Defendant seeks dismissal of Plaintiff's Title VII claim for failure to state a claim upon which relief may be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendant further seeks dismissal of Plaintiffs ADEA claim under Rule 12(b)(1) of the Federal Rules of Civil Procedure, on grounds of Eleventh Amendment immunity.

## II.   Governing Standards

Motions to dismiss under Rule 12(b)(1) "generally take one of two forms. The moving party may (1) facially attack the complaint's allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by

---

[1] Under Oklahoma law, an action is commenced with the filing of a Petition. Because this case has been removed, the Court refers to the Petition as the Complaint, consistent with the Federal Rules of Civil Procedure and federal nomenclature.

[2] *See Burk v. K-Mart Corp*., 770 P.2d 24, 28 (Okla. 1989).

2

presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests." *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1074 (10th Cir. 2004) (internal quotation marks and citation omitted). Here, Defendant makes a facial attack as to the existence of subject matter jurisdiction. Where a motion to dismiss is based on a facial attack, courts "apply the same standards under Rule 12(b)(1) that are applicable to a Rule 12(b)(6) motion to dismiss for failure to state a cause of action." *Muscogee (Creek) Nation v. Okla. Tax Comm'n*, 611 F.3d 1222, 1227 n.1 (10th Cir. 2010).

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Robbins v. Oklahoma.*, 519 F.3d 1242, 1247 (10th Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Pleadings that do not allow for at least a reasonable inference of the legally relevant facts are insufficient." *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1236 (10th Cir. 2013) (internal quotation marks and citation omitted). And a complaint must contain more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

### III. Discussion

#### A. Title VII Retaliation

To establish a prima facie case of retaliation under Title VII, a plaintiff must show "'(1) that [she] engaged in protected opposition to discrimination, (2) that a reasonable

employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action.'" *Alabi v. Vilsack*, 860 F. App'x 576, 581 (10th Cir. 2021) (quoting *Hansen v. SkyWest Airlines*, 844 F.3d 914, 925 (10th Cir. 2016)). With respect to the first element, an employee has engaged in protected activity if he or she opposes employment discrimination based on race, color, religion, sex, or national origin. *See Dean v. Computer Scis., Corp.*, 384 F. App'x 831, 838 (10th Cir. 2010); *see also Iweha v. State of Kansas*, 121 F.4th 1208, 1233 (10th Cir. 2024) ("The 'protected activity' refers to the plaintiff's 'protected opposition to discrimination' made illegal under Title VII." (quoting *Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1233 (10th Cir. 2015)); *McDonald-Cuba v. Santa Fe Protective Servs., Inc.*, 644 F.3d 1096, 1102 (10th Cir. 2011) (Under Title VII, "protected activity consists of activity opposing or complaining about discrimination by the employer based on race, color, religion, gender, or national origin." (citing 42 U.S.C. § 2000e-2)).

Plaintiff identifies her "protected activity" as "reporting ethical violations, conflicts of interest, and financial misconduct." Compl., ¶ 64. Such conduct is not protected activity for the purposes of a Title VII retaliation claim. And in her Response, Plaintiff simply argues that her claims "implicate discriminatory treatment, which qualifies as protected opposition under Title VII." Resp. at 5. Her conclusory argument does not suffice. The failure to allege any facts showing protected activity is fatal to Plaintiff's Title VII claim. *See, e.g., Collins v. Kansas City Mo. Pub. Sch. Dist.*, 92 F.4th 770, 774 (8th Cir. 2024) (Title VII retaliation claim failed to establish plaintiff was engaged in protected activity where plaintiff "was complaining of the school district's alleged retaliation against him as

4

a whistleblower, not as someone who had participated in protected activity that concerns Title VII"); *Wolfe v. Ford Motor Co.*, No. 09-2615-JWL, 2010 WL 11627419 at *3 (D. Kan. June 9, 2010) (plaintiff's "whistleblower activity" of "utilizing the corporate fraud hotline to report that the human resources manager had manipulated employees' time-keeping records" was not activity protected by Title VII and, therefore, claim was subject to dismissal); *New v. Bd of Cnty. Comm'rs for Tulsa Cnty.*, 434 F. Supp.3d 1219, 1226 (N.D. Okla. 2020) (dismissing Title VII retaliation claim based on plaintiff's reporting of "a consensual sexual relationship between co-workers" because such conduct is not protective activity); *Manatu v. Bowery Residents Comm.*, No. 99–CV–722 (FB), 2000 WL 1159330, at *2 (E.D.N.Y. Aug. 11, 2000) (finding that the plaintiff failed to show that she engaged in protected activity when she "allege[d] that she was retaliated against [for][ ] report[ing] mismanagement . . . to state auditors" because "Title VII does not protect whistleblowers who complain about mismanagement"). Accordingly, the Court dismisses Plaintiff's Title VII claim.

  **B.**  **Eleventh Amendment Immunity Bars Plaintiff's ADEA Claim**

  Defendant moves for dismissal of Plaintiff's ADEA claim asserting Eleventh Amendment immunity. Plaintiff responds and argues Defendant has waived Eleventh Amendment immunity by removing this action to federal court.

  When a plaintiff sues a State in federal court, the State can invoke two immunities: (1) Eleventh Amendment immunity from suit – a jurisdictional bar that prevents a federal court from hearing the case; and (2) sovereign immunity from liability, which is a substantive defense. *See Trant v. Oklahoma*, 754 F.3d 1158, 1172 (10th Cir. 2014). The

latter immunity is not affected by the removal of a case to federal court. *See id.* at 1172 (recognizing that a state may invoke immunity from liability even after agreeing to removal); *see also Barrow v. Kansas State Univ.*, No. 22-3266, 2023 WL 10101935 at *3 (10th Cir. Oct. 25, 2023) (fact that the State of Kansas "effectively waived its Eleventh Amendment immunity by consenting to removal to federal court" was "not relevant or determinative" to issue of its entitlement to the "traditional sovereign immunity from liability"); *Bright v. Univ. of Okla. Bd. of Regents*, 705 F. App'x 768, 769 n. 2 (10th Cir. 2017) ("A state that removes a case to federal court waives its Eleventh Amendment immunity from suit in federal court but not its sovereign immunity from liability.").

Here, Defendant invokes Eleventh Amendment sovereign immunity from liability and seeks dismissal of Plaintiff's ADEA claim on jurisdictional grounds. *See Pettigrew v. Okla. ex rel. Okla. Dep't of Pub. Safety*, 722 F.3d 1209, 1212 (10th Cir. 2013) ("[I]mplicit in enactment of the Eleventh Amendment is that state sovereign immunity ordinarily bars federal-court jurisdiction over private suits against a state by citizens of the state.").[3] Plaintiff has not alleged that any exception to sovereign immunity would allow her to sue Defendant for damages under the ADEA. *See Levy v. Kan. Dep't of Soc. & Rehab. Servs.*, 789 F.3d 1164, 1168 (10th Cir. 2015) (explaining that state agencies are generally protected from suit by sovereign immunity under the Eleventh Amendment unless: (1) the state consents to suit; (2) Congress has appropriately abrogated a state's sovereign immunity; or

---

[3] Defendant, as an agency of the State, is treated as an "arm of the state" for sovereign immunity purposes. *See Colby v. Herrick*, 849 F.3d 1273, 1276 (10th Cir. 2017).

(3) Plaintiff's complaint alleges an ongoing violation of federal law and Plaintiff is seeking prospective relief).

Plaintiff, relying solely on her waiver-by-removal argument, fails to address Defendant's invocation of sovereign immunity from liability. The Court agrees with Defendant that Oklahoma has not consented to suit or liability under the ADEA and has waived its Eleventh Amendment rights. *See* Okla. Stat. tit. 51, § 152.1. And "the Supreme Court has rejected Congress's attempt to abrogate state sovereign immunity in the ADEA." *Barrow*, 2023 WL 10101935 at *3 (citing *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 91-92 (2000). Moreover, Plaintiff seeks solely monetary damages against Defendant and does not allege any ongoing violation of federal law. Accordingly, sovereign immunity from liability bars Plaintiff's ADEA claim.

## C.    Leave to Amend is Denied

Plaintiff has requested that she be granted leave to amend her pleading should the Court deem dismissal of her claims proper. Plaintiff's request is wholly conclusory. She fails to identify any relevant additional factual allegations or governing law that would deem leave to amend proper. She simply cites the familiar standard under Rule 15(a)(2) of the Federal Rules of Civil Procedure that the court should "freely give leave when justice so requires."

Plaintiff has not filed a formal motion requesting leave to amend. *See Calderon v. Kan. Dep't of Social and Rehab. Servs.*, 181 F.3d 1180, 1186–87 (10th Cir. 1999) (Generally, "a court need not grant leave to amend when a party fails to file a formal motion."). Nor has Plaintiff complied with this Court's local rule governing amendment

7

pursuant to Rule 15(a)(2).  *See* LCvR 15(a)(2).  Under these circumstances, Plaintiff has failed to provide sufficient notice of the basis for any further amendment.  *See Calderon*, 181 F.3d at 1186–87  (explaining "a request for leave to amend must give adequate notice to the district court and to the opposing party of the basis of the proposed amendment before the court is required to recognize that a motion for leave to amend is before it" and noting the Circuit has held an informal request to amend made in a response to a motion to dismiss was insufficient); *see also Albers v. Bd. of Cnty. Comm'rs of Jefferson Cnty., Colo*., 771 F.3d 697, 706 (10th Cir. 2014) ("[A] bare request to amend in response to a motion to dismiss is insufficient to place the court and opposing parties on notice of the plaintiff's request to amend and the particular grounds upon which such a request would be based."); *Barrett v. Univ. of N.M*., 562 F. App'x 692, 694–95 (10th Cir. 2014) (mere suggestion in opposition to motion to dismiss that plaintiff should be allowed leave to amend was insufficient; a "formal motion to amend, accompanied by a purported amended complaint, gives the [trial] judge an opportunity to consider whether the new complaint can pass muster" and "[a] less disciplined approach wastes time and effort").  The Court, therefore, denies Plaintiff's request for leave to amend.

        **D.**    **The Court Declines to Exercise Supplemental Jurisdiction Over Plaintiff's State Law Claim**

The only remaining claim in this lawsuit is Plaintiff's state-law *Burk* claim.  The Court declines to exercise supplemental jurisdiction over the state-law claim.  *See* 28 U.S.C. § 1367(c)(3) (allowing court to "decline to exercise supplemental jurisdiction" over a state-law claim when it "has dismissed all claims over which it has original jurisdiction .

8

. . .").[4] The Tenth Circuit has stated that "[n]otions of comity and federalism demand that a state court try its own lawsuits absent compelling reasons to the contrary." *Thatcher Enter. v. Cache Cnty. Corp.*, 902 F.2d 1472, 1478 (10th Cir. 1990). Moreover, the Tenth Circuit has instructed that "[w]hen all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." *See Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011); *see also Brooks v. Gaenzle*, 614 F.3d 1213, 1229 (10th Cir. 2010) (affirming district court's grant of summary judgment on federal claims for excessive force and conspiracy and malicious prosecution but reversing district court's grant of summary judgment on remaining state law claims of assault and battery as "best left for a state court's determination" and declining to exercise supplemental jurisdiction) *abrogated on other grounds by Torres v. Madrid*, 592 U.S. 306 (2021).

In the exercise of its discretion, the Court finds the state court is in a better position to evaluate Plaintiff's remaining state-law claim. There are no compelling reasons why this Court should address the state-law claim. Accordingly, the Court will remand the state-law claim to state court.

    **E.    Admonishment to Plaintiff's Counsel Concerning Citations in the Response Brief**

As a final matter, the Court takes the opportunity to address an issue raised by Defendant in its Reply about the case citations in Plaintiff's Response that Defendant

---

[4] This case was removed solely on the basis of federal question jurisdiction. *See* Notice of Removal [Doc. No. 1]. The record is void of any evidence that the parties are of diverse citizenship. To the contrary, the records supports that the parties are all citizens of the State of Oklahoma.

describes as "wholly inaccurate." *See* Reply at 1, n. 1.  The Court has reviewed these case citations and agrees with Defendant that they are inaccurate, nonexistent and include direct quotes that cannot be located.[5]

Further, these inaccuracies signal that Plaintiff's counsel may have used AI to assist in the drafting of Plaintiff's Response (or otherwise counsel produced exceptionally sloppy work).  In this regard, this Court's Chambers Rules include "Disclosure and Certification Requirements" for use of "Generative Artificial Intelligence" and expressly provide that an attorney or party must disclose in any document to be filed with the Court "that AI was used and the specific AI tool that was used" and to "certify in the document that the person has checked the accuracy of any portion of the document drafted by generative AI, including all citations and legal authority." *See id.*[6]  No such disclosure and certification has been made in this case.  The Court's Rules further provide that an attorney will be responsible for the contents of any documents prepared with generative AI, in accordance with Rule 11 of the Federal Rules of Civil Procedure, and that the failure to make the disclosure and certification "may result in the imposition of sanctions." *Id.*

Certainly, courts have increasingly found the imposition of sanctions proper in response to an attorney's conduct in citing "fake cases" that are "hallucinations" generated by an artificial intelligence platform.  *See, e.g., Wadsworth v. Walmart*, 348 F.R.D. 489,

---

[5] Defendant points out these inaccuracies and states that they "make it impossible for Defendant to provide a complete response to Ms. Hill's Opposition." *See* Reply at 1, n. 1.  Defendant does not, however, request any affirmative relief.

[6] Available at www.okwd.uscourts.gov/chambers-rules.

10

495-496 (D. Wyo. 2025) (citing fake cases in a signed motion violated Rule 11(b)(2) and subjected attorneys to imposition of monetary sanctions); *Bunce v. Visual Technology Innovations, Inc.*, No. 23-cv-1740, 2025 WL 662398 at *1 (E.D. Pa. Feb. 27, 2025) (imposing sanctions where the attorney filed two separate motions that cited two cases that could not be located "on any legal research tool . . . ."); *Ramirez v. Humala*, No. 24-CV-242 (RPK) (JAM), 2025 WL 1384161 at * 1 (E.D.N.Y. May 13, 2025) (collecting cases finding "the submission of nonexistent case citations in filings to the court to constitute sanctionable conduct" under Fed. R. Civ. P. 11(b)(2)).

This Order serves as a strong admonishment to Plaintiff's counsel. On remand, Plaintiff's counsel is forewarned of possible sanctions that the state court may choose to impose should counsel continue to submit filings with such inaccuracies as those contained in its Response.

**IV.  Conclusion**

IT IS THEREFORE ORDERED as follows:

1) Defendant's Motion to Dismiss and Brief in Support [Doc. No. 6] is GRANTED and Plaintiff's federal claims are DISMISSED.

2) The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claim and that claim is remanded to the District Court of Oklahoma County, State of Oklahoma for further proceedings.

A separate judgment of dismissal shall be entered contemporaneously with this Order on Plaintiff's federal claims. The Clerk of Court is directed to take all actions

necessary to effect a remand of the remaining state-law claim to the District Court of Oklahoma County, State of Oklahoma.

IT IS SO ORDERED this 3rd day of July, 2025.

SCOTT L. PALK
UNITED STATES DISTRICT JUDGE